SILVER BAY ASSOCIATION FOR CHRISTIAN CONFERENCES AND TRAINING, Plaintiff, *v.* IDA F. LANDON, Defendant.

Supreme Court, Warren Special Term, December, 1923.

Mortgages — power of attorney to convey — when language of power of attorney will be construed against grantor — purchase-money mortgage.

The language of a power of attorney is not to be enlarged by construction to cover powers not naturally within its scope, neither is it to be unduly restricted.

Where the rights of third parties have intervened the language of a power of attorney, if of doubtful import, will be construed against the grantor and read in the light of the surrounding circumstances in order to give effect to the evident intention of the principal at the time the power is exercised.

Defendant, a woman of mature years, of limited education and no business experience, being the owner of certain land, gave to her cousin, a substantial business man and one of the officers of a trust company, a power of attorney which authorized him for a period of three years to lease the land for not less than $100 a year or to sell it for not less than $10,000, " and to do every other thing necessary or proper for carrying into effect the execution of any agreement of sale made by him," and defendant undertook at all times to ratify whatsoever the attorney should lawfully do or cause to be done in or concerning the premises. Plaintiff entered into possession of the premises under a lease which gave it an option to purchase the premises for $12,000 at any time during the life of the lease. Before the expiration of the term plaintiff entered into a contract with the attorney in fact to purchase the property at $12,000, made a down payment of $3,000 and agreed to pay the balance on or before the date when the power of attorney should expire. The day before the power of attorney expired $2,000 additional was paid, the deed made to one of plaintiff's directors, who, after giving back his bond and mortgage for $7,000 payable in one year, immediately conveyed the premises to plaintiff, which

also gave its note to defendant for the balance due. Defendant upon the sole ground that the attorney in fact had no authority to sell the premises and that he had sold them for an inadequate price, refused to accept payment of said mortgage at maturity and also refused to accept a legal tender of the balance due upon the purchase price, thereafter made. *Held*, that the taking of said mortgage was within the powers intended to be conferred by the power of attorney.

In an action brought to have the said mortgage discharged of record, evidence considered and plaintiff granted judgment for the relief asked for by the complaint.

*It seems* not to be unwarrantable for the court to take judicial notice of the fact that there is a well-known custom in this state to take mortgages for a substantial part of the purchase price of real property, when that is desired by the purchaser.

ACTION for the discharge of a mortgage on real property.

*Frank B. Wickes*, for plaintiff.

*Jenkins & Barker (Albert MacKusick*, of counsel), for defendant.

ANGELL, J. Plaintiff brings this action to secure the discharge of a mortgage on real property situated on the west shore of Lake George in the town of Hague, Warren county. The property was formerly owned by defendant, who, July 15, 1916, gave a power of attorney to George W. Auryansen, her cousin, which authorized him, for a period of three years, to lease and sell the property. Acting under this power, the attorney in fact soon thereafter leased the property to plaintiff corporation, for three years, and plaintiff entered into possession. The lease gave plaintiff, the lessee, an option, at any time during the life thereof, to purchase the property for $12,000. Over two years later, and on October 18, 1918, plaintiff exercised its option and entered into a contract with the attorney to purchase the property for the sum of $12,000, paid $3,000 down and agreed to pay the balance on or before July 15, 1919, which was the time when the three years' power expired. Evidently, however, when that time came the funds to pay the full balance were not readily available. Accordingly on July 14, 1919, $2,000 additional was paid, the deed delivered and a mortgage and bond given back for $7,000 payable in one year. The deed was given to Frederick W. Ganse, one of plaintiff's directors. He gave the mortgage back with his bond, then immediately conveyed to plaintiff, which also gave its note to defendant for the balance due. This method of getting the title into plaintiff was doubtless adopted to avoid the legal formalities requisite in the giving of a mortgage by a corporation.

Thus the situation reposed until the mortgage became due July 14, 1920, when plaintiff attempted to pay it. Defendant refused

to accept payment, claiming that Auryansen had no authority to sell and that he had sold for an inadequate price. A legal tender was afterward made and likewise refused, the money paid into court, and this action was brought.

Defendant's answer alleges that the power of attorney was obtained from her by fraud, that Auryansen exceeded his authority under it in that he sold for other than cash, and that in any event he was not authorized to take back a mortgage for a portion of the purchase price the time of payment of which extended beyond the expiration of his power of attorney. The question of fraud was disposed of upon the trial, it being decided that defendant executed the power with full knowledge of its provisions and that Mr. Auryansen acted under it in the utmost good faith and for the best interests of the defendant, and at no little personal sacrifice.

Neither does it seem to me that defendant is entitled to succeed upon the technical defense which she asserts. It is true that the language of a power of attorney is not to be enlarged by construction to cover powers not naturally within its scope. Yet it is not to be unduly restricted. Where the rights of third parties have intervened, as here, its language, if of doubtful import, is to be construed against the grantor of the power. 21 R. C. L. 881. Likewise, the power should be read in the light of the surrounding circumstances in order to give effect to the evident intention of the principal at the time the power was exercised. 31 Cyc. 1408.

What were the circumstances which gave rise to the execution of this power? Miss Landon, the defendant, inherited this property which consisted of about seventy-three acres of land with a house and other buildings thereon, from her father who died in 1912. Her father left no other heirs. He left no personal property, so that all that defendant had to rely upon for her support was this land. It was then incumbered with a mortgage of $1,200. Defendant subsequently incumbered it with two additional mortgages, the three amounting in 1918 to about $2,500. Defendant is a woman of mature years, of limited education and no business experience. She has apparently supported herself partly by living on the property, partly by proceeds from the later mortgages and partly by securing employment as a laundress, and in various other domestic capacities. She has evidently enjoyed none of the luxuries of life and few of the comforts, except hard work. For some time before the power of attorney was given, the holder of the $1,200 mortgage upon the property was threatening to foreclose, the interest having become in arrears. The taxes were unpaid. All indications pointed to the loss of the property unless something was done. Messrs. Douglas & Gordon, a firm of attorneys of high

standing in Troy, had been the attorneys for defendant's father, had settled his estate and had acted for her, endeavoring to sell the property in question. They came into correspondence with defendant's cousin Auryansen, a substantial business man and an officer of one of the large trust companies in Boston. Auryansen came to Troy and spent practically a week there and at Lake George investigating regarding this property and having conferences with defendant and her attorneys. As a result he was prevailed upon by the attorneys to accept the power of attorney, they having informed him that it was impossible to lease or sell the property otherwise, because defendant was constantly changing her mind in regard to it and if she agreed to sell at a stated price when the bargain came to be consummated she was likely to back out, thinking then that she should receive more. The power of attorney authorized Auryansen for a period of three years to lease the property for not less than $100, and to sell it for not less than $10,000. The power was carefully drawn, with somewhat more elaboration of detail than is customary. Auryansen was empowered to convey the property, in defendant's name, " and to do every other thing necessary or proper for carrying into effect the execution of any agreement of sale made by him," and defendant undertook at all times to ratify whatsoever the attorney should lawfully do or cause to be done in or concerning the premises.

Acting under this power Auryansen on July 21, 1916, executed a lease of the property to the plaintiff for three years from July 15, 1916, for $250 per year — $50 and interest to be retained and expended by the lessee for improvements — with an option to purchase for $12,000. Later, in 1918, the agreement to sell was made, and subsequently the deed of the property was executed, as hereinbefore stated. With the $3,000 paid when the agreement of purchase was signed, Auryansen paid off the three mortgages, investing the balance in government bonds for defendant. The $2,000 which was paid July 14, 1919, was likewise invested.

It is evident from the situation that defendant did not want the cash. If cash had been paid it would have been immediately invested, following the course of the payments theretofore made. What defendant desired was an assured income, sure if not large. This had evidently been the burden of talks between her and her cousin, the attorney in fact. This is shown by his letter, plaintiff's Exhibit 10, written to defendant August 12, 1916, shortly after the lease was signed. After telling her about the lease and the option to purchase he says: " I think you will feel as I do that this is the best arrangement that could be made and you are in a position now where you need not worry for sometime, and if we

sell it for $10,000 or over you should then have enough to live on comfortably as long as you need it."

The mortgage was safe as an investment. It was secured by the land on which $5,000 had been paid, by the bond of Mr. Ganse and by the note of plaintiff. The security was beyond question. It was such that if defendant had desired cash it could doubtless have been turned into cash in a few hours. Defendant herself did not object that security instead of money was taken. When she refused to carry the deal through it was for the express and groundless reasons that she had not given Auryansen authority to sell at any price, and that the price obtained was too small.

These facts, and the whole situation of the parties as shown by the evidence, satisfy me that the taking of the mortgage for part of the purchase price was within the powers intended to be conferred by the instrument in question. A careful search by diligent counsel on both sides has failed to reveal any case in this state where a similar situation has arisen, where our courts have passed upon the question as to whether a power of attorney to sell land carried a power to take back a mortgage for a part of the purchase price. The courts have often held, in commercial cases, that authority to sell does not authorize a sale on credit, unless it be a known usage of trade that such articles should be so sold. *Delafield* v. *State of Illinois*, 26 Wend. 192, 223. But that and similar cases are not like this either in principle or by analogy. In such cases where credit is extended, eventual payment depends upon the financial standing of the buyer when the obligation falls due, about which often little can be known. Here there was no uncertainty, for the payment was secured beyond peradventure by immovable collateral.

The case most like this in other jurisdictions is that of *Silverman* v. *Bullock*, 93 Ill. 11, where under a power of attorney certain lots of land were sold, and notes secured by mortgages were taken for part of the sale price. The court, in upholding the action of the attorney in fact under the power, said: " The power being general, it would seem to be in the discretion of the attorney to make sales of the property according to the usual custom in such matters, whatever that might be."

Defendant here urges that this case is not authority in the present instance because no custom has been shown to exist. But there is a well-known custom in this state to take mortgages for a substantial part of the purchase price, when that is desired by the purchaser. It would scarcely seem to be unwarrantable for the court to take judicial notice of this fact. It is generally recognized by business men that a substantial portion of the real estate deals

in any community would fail of consummation if purchase-money mortgages were not accepted by the grantor.

It is said in 2 Corpus Juris, 557: " It is also important, in the construction of a power of attorney, that the design and object of the parties be kept in view, and the power should be read not only with reference to the language used, but also in the light of all the surrounding circumstances in order as nearly as possible to give effect to the evident intention of the principal, and so as to carry out rather than to defeat the purpose of the appointment."

It would seem that the situation here is plainly within the language above quoted. It was the intent of the principal when the power was executed that the property be sold if $10,000 or more could be obtained. The surrounding circumstances, some of which have been detailed herein, clearly indicate that it was an investment which defendant desired and needed, not the cash, and that the purpose of the appointment of Auryansen as attorney was fulfilled as completely by the sale of the property with a mortgage back for a portion of the purchase price, as it would have been had the entire consideration been paid in cash at the time the deed was delivered.

If, however, it were otherwise, there are shown acts and facts which amount to a ratification by defendant of the action of her attorney. Auryansen testified that late in 1919 or early in 1920 he sent defendant a statement of his dealings with the property which showed the payment of the $3,000 and the $2,000 on the purchase price, and an item amounting to $28 of unearned insurance which was refunded to him when the deed was taken by plaintiff. This amount of $28 was subsequently paid by him to defendant personally. Her attempts to explain that she did not know what this was are unsatisfactory. It is a necessary conclusion from the evidence that defendant knew the property had been sold, knew what had been paid down upon it, and the balance due. This knowledge she had at least six months, and very likely longer, before the time when she refused to consummate the transaction by accepting the money due upon the mortgage and to give a satisfaction thereof. This was an unreasonable time to delay repudiation, if she desired to repudiate.

Furthermore, when defendant refused to carry out the sale, the sole grounds for such refusal, as heretofore stated, were that Auryansen had not authority to sell and that he had sold at an inadequate price. There was no objection because he had taken a mortgage for part payment, due after his power of attorney had expired. Defendant was apparently satisfied to have him do that, and there would, it is likewise apparent, have been no objection

if the price obtained by Auryansen had, at the time the sale was to be consummated, seemed satisfactory to her. Having raised specific objections to the exercise of his power, defendant should be deemed, in a case like this, to have waived objections that were not even suggested. This rule should not be applied where it would result in countenancing overreaching or fraud; but it should be when its application results in the consummation of a fair bargain fairly entered into. Where there is no objection, there is acquiescence. Where there is acquiescence, there is ratification.

Plaintiff has shown itself entitled to the relief asked in the complaint.

Judgment accordingly.